UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO GARCIA,<br>    Plaintiff,<br>v.<br>TEGSTI WOLDEMICHAEL,<br>    Defendant. | Case No. 21-cv-05079-DMR<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br>Re: Dkt. No. 31 |

Plaintiff Orlando Garcia filed a complaint against Defendant Tegsti Woldemichael, owner of La Dolce Vita, an establishment in Oakland, California. Garcia alleges that Woldemichael violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Unruh Civil Rights Act, Cal. Civ. Code section 51 *et seq*. Woldemichael previously appeared in this action through counsel but subsequently failed to respond or defend himself.[1] Accordingly, Garcia filed this motion for default judgment. [Docket No. 31.] On July 13, 2022, Woldemichael's counsel submitted a sworn declaration representing that Defendant does not oppose the motion and counsel did not intend to appear for the scheduled motion hearing on July 14, 2022. Declaration of Dan T. Danet ("Danet Decl.") ¶ 7 [Docket No. 35.] Accordingly, the court vacated the hearing and ruled that the matter may be resolved without a hearing. [Docket No. 36.] *See* Civ. L.R. 7-1(b). For the following reasons, the court grants Garcia's unopposed motion for default judgment.

---

[1] Both parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 7, 11.]

## I. BACKGROUND

Garcia is a person with disabilities who suffers from cerebral palsy and manual dexterity issues. Compl. ¶ 1. He cannot walk and uses a wheelchair for mobility. Woldemichael owns La Dolce Vita, an establishment located at 3931 Telegraph Avenue in Oakland. *Id.* ¶ 3. La Dolce Vita is a facility open to the public, a place of public accommodation, and a business establishment. *Id.* ¶ 9.

Garcia visited La Dolce Vita in May 2021 with "the intention to avail himself of its goods or services" and to assess the business for compliance with disability access laws. Compl. ¶ 8. He alleges that Woldemichael failed to provide wheelchair-accessible dining surfaces inside and outside the establishment. *Id.* ¶ 10. One problem he personally encountered was a lack of sufficient knee or toe clearance for wheelchair users. *Id.* ¶¶ 12, 15. He also alleges his belief that "there are other features of the dining surfaces that likely fail to comply with the ADA Standards," but he does not describe any other specific violations. *See id.* ¶ 13. Garcia claims that these violations caused him difficulty and discomfort. *Id.* ¶¶ 15-17. He intends to return to the establishment but is currently deterred from doing so due to these accessibility barriers. *Id.* ¶ 20.

Garcia filed the complaint on June 30, 2021 and served Woldemichael with the summons and complaint on July 27, 2021. [Docket Nos. 1, 8.] Counsel for Woldemichael subsequently entered an appearance. On September 20, 2021, Garcia notified the court that the parties had reached a tentative settlement. [Docket No. 15.] On October 18, 2021, the court conditionally dismissed the case. [Docket No. 18.] Woldemichael's counsel then informed Garcia's counsel that Woldemichael was "unable to proceed with the settlement agreement due to recent unforeseen circumstances," and that the settlement agreement was not executed. [Docket No. 19.] Garcia moved to reopen the case, which the court granted. [Docket Nos. 19, 23.]

Thereafter, the clerk entered default against Woldemichael on January 27, 2022. [Docket No. 26.] Garcia filed this motion on April 7, 2022 ("Mot.") and served it on Woldemichael's counsel—which has not moved to withdraw—electronically and via mail. [Docket No. 31-11 ¶ 5, -15.] *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with

written notice of the application at least 7 days before the hearing."). No opposition was filed.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))).

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III. ANALYSIS

### A. Jurisdiction

Before entering default judgment, a federal court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). In the present matter, the court has subject matter jurisdiction and personal

3

jurisdiction over the parties.

### 1. Subject Matter Jurisdiction

Garcia alleges disability discrimination in violation of the ADA, 42 U.S.C. § 12101 *et seq.* The court has subject matter jurisdiction over that claim pursuant to 28 U.S.C. § 1331. The court has supplemental jurisdiction over the related Unruh Act claim under 28 U.S.C. § 1367(a).

### 2. Personal Jurisdiction

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). Traditional bases for personal jurisdiction include domicile or personal service within the forum state. *See Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal. 2014) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)). According to the proof of service, Garcia served Woldemichael by personal service at 3631 Telegraph Avenue, Oakland, California, on July 16, 2021. [Docket No. 8.] Accordingly, the court may exercise personal jurisdiction over Woldemichael.

## B. Adequacy of Service

Federal Rule of Civil Procedure 4(e) allows for an individual to be served by "delivering a copy of the summons and of the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). Here, the proof of service indicates that the summons and complaint were served on Woldemichael personally. [Docket No. 8.] Woldemichael's counsel also appeared in this action, which supports a finding that service was adequate. The court concludes that service of process was properly accomplished.

## C. Application of the *Eitel* Factors

Having found that the jurisdictional and service requirements are met, the court now turns to the *Eitel* factors to determine whether default judgment should be granted.

### 1. Prejudice

Garcia argues that, in absence of a default judgment, he will be left without other recourse and will suffer prejudice unless default judgment is entered. Mot. at 4. Since Woldemichael has failed to participate in the litigation after settlement negotiations fell through and the court

4

reopened the case, Garcia will likely have no other avenue for recovery available to him. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding prejudice to plaintiff where a defendant sued under the ADA and Unruh Act failed to appear in the action). This factor weighs in favor of granting default judgment.

### 2. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). After an entry of default, well-pleaded allegations in the complaint are deemed true, except for the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

#### a. ADA

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). To prevail on a Title III discrimination claim, a plaintiff must show that (1) they are disabled within the meaning of the ADA; (2) the defendant is "a private entity that owns, leases, or operates a place of public accommodation"; and (3) the defendant discriminated against the plaintiff by denying public accommodations because of the plaintiff's disability. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020).

Unlawful discrimination under the ADA occurs when features of a public accommodation deny equal access to disabled persons:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i). The ADA lists five subsections describing different types of

discrimination. 42 U.S.C. § 12182(b)(2)(A)(i)-(v). The subsection at issue in this case is 42 U.S.C. § 12182(b)(2)(A)(iv) ("Section IV"). Discrimination under Section IV includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable." *Id.* Under the ADA, a plaintiff can sue only for injunctive relief, i.e., removal of any barriers. Monetary damages are not available for private plaintiffs. *Oliver*, 654 F.3d at 905.

To prove discrimination under Section IV, a plaintiff must show a violation of applicable accessibility standards. *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc); *Donald v. Cafe Royale*, 218 Cal. App. 3d 168, 183 (1990)). There are three categories of accessibility requirements under Title III of the ADA—the 'new construction' provisions . . . ; the 'alteration' provisions . . . ; and the 'readily achievable' provisions." *Moeller*, 816 F. Supp. 2d at 847. "In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman*, 631 F.3d at 945 (quoting 42 U.S.C. § 12183(a)(1)); *see also Moeller*, 816 F. Supp. 2d at 847.[2] Existing facilities that were altered after January 26, 1992 are also required, "to the maximum extent feasible, to be 'readily accessible to and useable by' individuals with disabilities." *Moeller*, 816 F. Supp. 2d at 847 (citing 42 U.S.C. § 12183(a)(2)).[3] "In existing but unaltered facilities, barriers must be removed where it is 'readily achievable' to do so." *Id.*

To satisfy these standards, buildings with new construction or post-January 1992 alterations must comply with either the 1991 or 2010 ADA Standards for Accessible Design

---

[2] The ADA defines newly constructed facilities as construction intended for "first occupancy later than 30 months after July 26, 1990," which was the date the ADA was enacted. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.401(a)(1) ("discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.").

[3] The Justice Department's ADA Architectural Guidance defines alteration as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1079 (N.D. Cal. 2014) (citing 28 C.F.R. § 36.402 App. A).

("ADAAG"), depending on the date the construction or alterations began. 28 C.F.R. § 36.406; *Lane v. Landmark Theatre Corp.*, No. 16-CV-06790-BLF, 2020 WL 1976420, at *8 (N.D. Cal. Apr. 24, 2020).[4] The ADAAG standards "lay out the technical structural requirements of places of public accommodations." *Chapman*, 631 F.3d at 945. Facilities must conform to the updated 2010 ADAAG standards unless they have not been altered since March 15, 2012 and comply with the 1991 standards. *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015). For existing but unaltered facilities, "discrimination includes 'a failure to remove architectural barriers . . . where such removal is readily achievable.'" *Id.* (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)); *see also Moeller*, 816 F. Supp. 2d at 847. 42 U.S.C. § 12181(9). Where no alteration to the establishment has occurred on or after March 15, 2012, "elements in the [facility] are actionable barriers only if they fail to comply with the 1991 ADAAG Standards." *Lane v. Landmark Theatre Corp.*, 2020 WL 1976420, at *13 (N.D. Cal. Apr. 24, 2020). In other words, "Defendants are liable for failing to fix the barriers alleged by Plaintiffs if and only if (1) the Item constitutes a violation of the 1991 ADAAG Standards, and (2) it is 'readily achievable' to modify the element to comply with the 2010 ADAAG Standards." *Id.*

To prevail on a discrimination claim involving an existing but unaltered facility, the plaintiff must establish that alterations to the challenged barrier were readily achievable—defined as "easily accomplishable and able to be carried out without much difficult or expense," 42 U.S.C. § 12181—or that access could have been made available "through alternative methods without much difficulty or expense." *Lopez*, 974 F.3d at 1034.

---

[4] When Congress enacted the ADA in 1991, it directed the Department of Justice to issue interpretive regulations consistent with guidelines published by the Architectural and Transportation Barriers Compliance Board (the Access Board), an independent federal agency. *Kirola v. City & Cty. of S.F.*, 860 F.3d 1164, 1176-77 (9th Cir. 2017); *Miller v. Cal. Speedway Co.*, 536 F.3d 1030, 1025-26 (9th Cir. 2008). The Department of Justice adopted the 1991 ADAAG standards promulgated by the Access Board; although the Access Board subsequently issued revisions, "the only binding ADAAG requirements were the original ones adopted in 1991." *Kirola*, 860 F.3d at 1177. "In 2004, the Access Board published a wholesale revamp of ADAAG. Again, the new regulations were not then binding. But on September 15, 2010, DOJ updated its accessibility regulations by incorporating the 2004 ADAAG standards with slight variations." *Id.*

7

### i. Disability

The ADA defines a disability as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

As Garcia alleges that he "cannot walk" and "uses a wheelchair for mobility," he has established that he is a disabled person within the meaning of the ADA. *See* Compl. ¶ 1.

### ii. Owns, Operates, or Leases a Public Accommodation

"[A] restaurant, bar, or other establishment serving food or drink" is considered a public accommodation under the ADA. 42 U.S.C.A. § 12181(7)(B). Garcia alleges that La Dolce Vita is a "facility open to the public, a place of public accommodation, and a business establishment." Compl. ¶¶ 9. He further alleges that Woldemichael owned La Dolce Vita in May 2021 and currently owns the establishment. *Id*. ¶¶ 2, 3. Accordingly, he has adequately pleaded that Woldemichael owns, operates, or leases a place of public accommodation.

### iii. Discrimination

As noted, to prove discrimination under Section IV, Garcia must show a violation of applicable accessibility standards. Garcia alleges that Woldemichael failed to provide wheelchair accessible indoor and outdoor dining surfaces in conformance with the ADA Standards. Compl. ¶ 11. Specifically, he experienced a "lack of sufficient knee or toe clearance under the inside and outside dining surfaces for wheelchair users." *Id.* ¶ 12.

Garcia assumes without support that challenged barrier violates the 2010 ADAAG standards. *See* Mot. at 9. However, he offers no allegations or evidence to establish that the property was constructed or altered since 2012, which would trigger La Dolce Vita's obligation to meet the 2010 standards. *See Kohler*, 779 F.3d at 1019; *Lane*, 2020 WL 1976420, at *8. As Garcia has not established the applicability of either the 2010 or the 1991 ADAAG standards, the court treats La Dolce Vita as subject to the least restrictive requirements for public accommodations: namely, the requirements for facilities that existed prior to January 26, 1993 and

8

have not been altered. The court relies on the 2010 and 1991 standards solely as guidance for whether La Dolce Vita contains architectural barriers. *See id.*[5]

        2010 ADAAG § 902.1 obligates dining surfaces to comply with the knee and toe clearance requirements set forth in Standard § 902.3. That provision requires that the tops of dining surfaces and work surfaces be 28 inches minimum and 34 inches maximum above the finish floor or ground. 2010 ADAAG Standard § 902.3. 2010 ADAAG § 902.2 also requires a clear floor space that complies with the requirements for knee and toe clearance in 2010 ADAAG Standard § 306. Knee clearance must be "11 inches (280 mm) deep minimum at 9 inches (230 mm) above the finish floor or ground, and 8 inches (205 mm) deep minimum at 27 inches (685 mm) above the finish floor or ground." 2010 ADAAG Standard § 306.3.3. Toe clearance must be "11 inches (280 mm) deep minimum at 9 inches (230 mm) above the finish floor or ground, and 8 inches (205 mm) deep minimum at 27 inches (685 mm) above the finish floor or ground." 2010 ADAAG Standard § 306.2.3.

        The 1991 ADAAG Standard § 4.32.3 requires knee clearance for wheelchair-accessible of at least 27 inches high, 30 inches wide, and 19 inches deep. 1991 ADAAG Standard § 5.1 requires that all restaurants offer wheelchair-accessible tables for at least five percent of their fixed tables that comply with the requirements of 1991 ADAAG Standard § 4.32.

        In support of the allegations of inadequate surfaces with insufficient knee or toe clearance, Garcia submitted a report and photos from a third-party investigator confirming that La Dolce Vita "provided inside and outside dining surfaces with no knee clearance measuring at least 27 inches high, 30 inches wide and 19 inches deep." Declaration of Robert Marquis ¶ 2 [Docket No. 31-4], Ex. 4 [Docket No. 31-6.] At minimum, those measurements violate the 1991 ADAAG Standard § 4.32.3 and 2010 ADAAG Standard §§ 902.1-.3. Taking the allegations in the complaint as true and as confirmed by the investigator's report, the court finds that Garcia adequately pleaded an

---

[5] The 1991 ADAAG standards are available at *ADA Accessibility Guidelines (ADAAG)*, U.S. Access Board, https://www.access-board.gov/adaag-1991-2002.html. The 2010 ADAAG standards are available at *Americans with Disabilities Act Accessibility Standards*, U.S. Access Board, https://www.access-board.gov/ada/.

architectural barrier to wheelchair accessibility. *See Johnson v. Prospect Venture LLC*, No. 21-cv-04195-EJD, 2022 WL 2276890, at *4 (N.D. Cal. June 23, 2022) (on motion for default judgment, accepting allegations of wheelchair accessibility barrier as true and considering evidence provided in support of motion).

With respect to the removal of the barriers, "[t]he Ninth Circuit recently decided to follow a burden-shifting framework to determine who bears the burden of proving that removal of an architectural barrier is readily achievable." *Prospect Venture*, 2022 WL 2276890, at *4 (citing *Lopez*, 974 F.3d 1030). "Under this burden-shifting analysis, the plaintiff bears the initial burden of plausibly showing that a proposal for removing a barrier is readily achievable, and then the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable." *Johnson v. In Suk Jun*, No. 19-cv-06474-BLF, 2020 WL 6507995, at *5 (N.D. Cal. Nov. 5, 2020) (granting motion for default judgment).

Here, Garcia alleges that the architectural barriers he identifies are "easily removed without much difficulty or expense" and are "readily achievable." Compl. ¶ 19. He further claims that that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if Woldemichael could not achieve a complete removal of the barrier. *Id.* Federal regulations provide a non-exhaustive list of "steps to remove barriers," such as rearranging tables and chairs. 28 C.F.R. § 36.304(b)(4). At default judgment stage, courts have found that allegations like Garcia's to be adequate. *See Prospect Venture*, 2022 WL 2276890, at *5 (citing cases).

As Garcia has adequately alleged both the existence of an architectural barrier and that removal of the barrier is readily achievable, he has sufficiently pleaded a claim for disability discrimination under the ADA.

### b.     Unruh Civil Rights Act

The Unruh Act provides that "[a] violation of the right of any individual under the [ADA] shall also constitute a violation of" the Unruh Act. Cal. Civ. Code § 51(f). Since Garcia has established a claim against Woldemichael of disability access discrimination under the ADA, he also has established a claim under the Unruh Act.

10

### 3. Sum of Money at Stake in the Action

The fourth *Eitel* factor focuses on the amount of money at issue in the action. "[C]ourts should be hesitant to enter default judgment in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014); *see also Bd. of Tr. v. Core Concrete Const., Inc.*, No. 11-cv-02532-LB, 2012 WL 380304, at *1, *4 (N.D. Cal. Jan. 7, 2012) ("When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged."). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* "Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). A plaintiff can recover statutory damages for an Unruh Act claim if a violation of construction-related accessibility standards "denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(a). The amount of damages provided under the Unruh Act for a single violation is "a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

Garcia seeks statutory damages of $4,000 under the Unruh Act, as well as $3,917 in attorneys' fees and costs. Mot. at 14. The total amount requested is thus $7,917. Garcia's request is authorized by the applicable statutes and the complaint tailors the amount requested to the conduct alleged. This factor weighs in favor of granting default judgment.

### 4. Possibility of Dispute Concerning Material Facts

When a party "fail[s] to appear or otherwise respond . . . in defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaint[]." *DirecTV v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). All allegations in the complaint are taken as true, except for those regarding damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

Here, the possibility of a dispute about the material facts is unlikely. Woldemichael was served with the complaint and appeared through counsel; after settlement negotiations collapsed, he has not responded or defended himself in the action. The clerk accordingly entered default

11

against them. Garcia also mailed and electronically served this motion on Woldemichael's counsel, who remains on the docket and continues to receive electronic filing notices. [Docket No. 31-13; *see also* Docket No. 31-11 at ¶ 5.] Woldemichael's counsel subsequently represented that Woldemichael "fully, knowingly, and voluntarily desired to allow Default Judgment to be entered." Danet Decl. ¶¶ 3, 7. As set forth above, Garcia's well-pleaded allegations are presumed to be true, and he adequately alleged ADA and Unruh Act claims against Woldemichael. Woldemichael's non-opposition to default judgment renders it unlikely that there is a dispute about the material facts of the case.

### 5. Default Due to Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. When a defendant is properly served with the complaint and the motion for default judgment, an entry of default judgment is favored. *W. States Insulators & Allied Workers Pension Plan v. Jenco Mech. Insulation, Inc.*, No. 11-cv-0175 EMC, 2012 WL 1123229, at *3 (N.D. Cal. Apr. 3, 2012).

As detailed above, Garcia accomplished service of the summons and complaint on Woldemichael in July 2021 and engaged in settlement negotiations with Woldemichael. Given the length of time that has elapsed since the court reopened the case and in light of Woldemichael's non-opposition to this motion, Woldemichael's failure to respond is not due to excusable neglect. This factor weighs in favor of granting default judgment.

### 6. Policy of Favoring a Decision on the Merits

Despite the policy of favoring a decision on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b). "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc*, 238 F.2d at 1177. Here, Woldemichael did not answer the complaint, and he has remained unresponsive since the case was reopened. A decision on the merits is impractical as Woldemichael has refused to litigate this action.

On balance, the *Eitel* factors weigh in favor of granting Garcia's motion for default judgment.

12

**D.     Remedies**

Although the factual contentions of the operative complaint are accepted as true when determining the liability of a defaulting defendant, this rule does not apply to statements regarding damages. *See TeleVideo*, 826 F.2d at 917-18. To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

**1. Statutory Damages**

A plaintiff can recover statutory damages for an Unruh Act claim if a violation of construction-related accessibility standards "denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(a). The Unruh Act authorizes statutory damages of "no less than four thousand dollars ($4,000)" for each occasion on which a plaintiff was denied equal access. *Id.* § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731; *see also Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) (explaining that "[t]he statute lists actual damages and statutory damages as two separate categories of damages that a plaintiff may recover").

Garcia alleges, and his declaration confirms, that he visited La Dolce Vita once in May 2021 and eventually intends to "once it is represented to him that La Dolce Vita and its facilities are accessible." Compl. ¶¶ 8, 20; Declaration of Orlando Garcia ("Garcia Decl.") ¶¶ 2, 7-8 [Docket No. 31-4.][6] He requests an award of $4,000 in statutory damages. Mot. at 16. Because Garcia visited the established on one occasion, he is entitled to $4,000 in statutory damages. The

---

[6] Garcia's assertions that he visited the facility once on an unspecified date in May 2021 and "will return" are suspiciously vague. Nevertheless, the court must take Garcia's allegations as true on a motion for default judgment. *Cf. Garcia v. Chung Enters., L.P.*, No. 21-cv-05088-WHO, 2021 WL 7285264, at *4-5 (N.D. Cal. Dec. 14, 2021) (on a motion to dismiss for lack of subject-matter jurisdiction, finding that similar allegations by Garcia that "he went to the business, encountered a barrier, was deterred (and thereby injured), and 'will return to [the establishment] to avail himself of its goods or services and to determine compliance with the disability access laws once it is represented to him that … [the establishment is] accessible'" are "what is required to proceed" at the pleadings stage, but that "just as with every element of his case, Garcia's allegations about his intent to return will ultimately have to be tested by evidence").

court according awards him $4,000.

### 2. Injunctive Relief

An ADA plaintiff who establishes that a public accommodation has architectural barriers and that removal of those barriers is "readily achievable" is entitled to injunctive relief. *Moreno v. La Curacao,* 463 F. App'x 669, 670 (9th Cir. 2011). Courts may also grant injunctive relief for violations of the Unruh Act. *See* Cal. Civ. Code § 52.1(h). "[I]njunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C.A. § 12188(a)(2).

As discussed above, Garcia has adequately pleaded that La Dolce Vita has architectural barriers that readily can be removed. Accordingly, the court enters an injunction requiring Woldemichael to provide compliant wheelchair-accessible indoor and outdoor dining surfaces at La Dolce Vita.

### 3. Attorneys' Fees and Costs

The ADA gives courts the discretion to award attorneys' fees, including litigation expenses and costs, to prevailing parties. *Molski*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(h).

District courts in the Ninth Circuit typically employ the "lodestar analysis" in calculating fee awards. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (internal citation omitted). Fee awards calculated under the lodestar method generally are presumed to be reasonable, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208–09 (9th Cir. 2013), although the court ultimately retains discretion to modify the amount based on the specific circumstances of each case. The party seeking fees bears the initial burden of establishing the

14

1  hours expended litigating the case and must provide detailed time records documenting the tasks

2  completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Metro. Life Ins. Co.*,

3  480 F.3d 942, 945–46 (9th Cir. 2007). The requesting party also has the burden to demonstrate

4  that the rates requested are "in line with the prevailing market rate of the relevant community."

5  *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and

6  citation omitted). The court bears the discretion to impose a small "haircut" of ten percent or less

7  without specific explanation to account for unnecessarily duplicative fees. *Moreno v. City of*

8  *Sacramento*, 534 F.3d 1106 (9th Cir. 2008).

9  Here, Garcia's counsel request attorneys' fees in the amount of $3,085 representing 12.6

10 hours of work by numerous timekeepers. Mot. at 16; Declaration of Russell Handy ("Handy

11 Decl."). They seek hourly rates for attorneys Mark Potter at $650; Amanda Seabock at $500;

12 Isabel Masanque at $500, and Tehniat Zaman at $400. Handy Decl. ¶¶ 2-6.[7] They also request a

13 $100 hourly rate for work completed by legal assistants and paralegals, with the exception of

14 Marcus Handy, for whom they request a $200 hourly rate. *Id.* ¶¶ 7-8.[8] Garcia's counsel

15 declaration does not list each paralegal or legal assistant individually, but the time records reveal

16 that fourteen such individuals billed time to this matter. Counsel also submits declarations filed

17 by attorneys' fees experts Richard Pearl and John D. O'Connor in other cases, as well as excerpts

18 from Real Rate Report. Handy Decl. Exs. 6-8. The court disregards these third-party materials as

---

[7] Counsel's papers are carelessly prepared. The counsel declaration discusses a $650 hourly rate for attorney Russell Handy, but the record shows he was not a timekeeper in this matter. Meanwhile, the motion proffers different rates for attorneys Potter, Handy, Zaman, and an unexplained attorney Gutierrez—without mentioning attorneys Seabock and Masanque, who billed time on this case. Mot. at 23. The court considers the rates in the Handy Declaration only for the timekeepers in this action. Garcia's counsel at Potter Handy is again admonished for its deficient lawyering. *See Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-CV-06015-DMR, 2021 WL 5444784, at *1 (N.D. Cal. Feb. 22, 2021) (noting that "th[is] court repeatedly has had to use its resources to prod [the Center for Disability Access] to address deficiencies in their litigation practices, including late filings, incorrectly noticed hearings, and failures to respond to court orders.").

[8] The declaration erroneously re-starts the paragraph enumeration at the seventh paragraph, misstating paragraph seven as paragraph one, and so forth. For clarity, the court renumbers each paragraph starting at paragraph seven in the correct sequential order.

15

they are irrelevant.[9]

Multiple courts in this district have held that Garcia's counsel's proposed rates are unreasonably high, given the "routine and formulaic nature of the ADA cases litigated by Potter Handy LLP." *Prospect Venture*, 2022 WL 2276890, at *7 (citing cases); *Ghadiri v. Rampur*, No. 19-cv-2675-YGR-DMR, slip op. at 17-19 (N.D. Cal. Apr. 8, 2020) (ECF No. 20). "Many of these cases have considered the same evidence that [Garcia] submits here and found that it does not support the rates he seeks." *Johnson v. Iguanas Burritozilla, Corp.*, No. 21-cv-08471-BLF, 2022 WL 1750472, at *5 (N.D. Cal. May 31, 2022) (citing cases); *Johnson v. Lo*, No. 20-cv-06096-PJH-AGT, 2021 WL 5236552, at 4 (N.D. Cal. Oct. 21, 2021) (evidence "not particularly persuasive"); *Johnson v. Nuoc Mia Vien Dong 2, LLC*, No. 21-CV-01618-CRB, 2021 WL 3271232, at *5 (N.D. Cal. July 30, 2021) (evidence provided "limited value"); *see also Rampur*, No. 19-cv-2675-YGR-DMR, slip op. at 17-18 & n.5.

Recently, courts in this district have found that the following hourly rates for Garcia's counsel are reasonable: $475 for Potter; $350 per hour for Seabock and Masanque, and $250 for Zaman. *Prospect Venture*, 2022 WL 227690, at *7; *Johnson v. Pennylane Frozen Yogurt, LLC*, No. 22-cv-00609-BLF, 2022 WL 1750382, at *5 (N.D. Cal. May 31, 2022); *Johnson v. MKB Rescom LLC*, No. 20-cv-01460-BLF, 2022 WL 1062059, at *5 (N.D. Cal. Apr. 8, 2022); *Johnson v. La Fontaine Food, Inc.*, No. 21-cv-04838-BLF, 2022 WL 827646, at *5-6 (N.D. Cal. Mar. 18, 2022); *Johnson v. Ramirez*, No. 20-cv-04359-TSH, 2022 WL 1019554, at *12 (N.D. Cal. Mar. 15, 2022); *Lo*, 2021 WL 5236552, at *4; *Nuoc Mia Vien Dong 2*, 2021 WL 3271232, at *6; *Johnson v. Patel*, No. 18-cv-00211-MMC, 2020 WL 1865304, at *5-6 (N.D. Cal. Apr. 14, 2020); *Rampur*, No. 19-cv-2675-YGR-DMR, slip op. at 19. The court finds that those hourly rates are reasonable.

As for paralegal and legal assistant work, courts in this district regularly have affirmed the $100 hourly rate for all paralegals and declined to award a higher rate for legal assistant work

---

[9] The Pearl Declaration is irrelevant because it was filed in 2010 in a wholly different case before the Ninth Circuit litigated by different lawyers than Garcia's counsel. Handy Decl. Ex. 6. The excerpts from the Real Rate Report are irrelevant because they are from 2020 and do not include rates from the San Francisco Bay Area, contrary to Garcia's assertion in his motion. Handy Decl. Ex. 7; *see* Mot. at 20. The O'Connor Declaration was submitted in 2019 for an unidentified case, and Garcia's counsel does not explain its relevance to this case.

performed by Marcus Handy based on similar submissions. *See, e.g.*, *Pennylane*, 2022 WL 1750382, at *5; *MKB Rescom*, 2022 WL 1062059, at *5; *La Fontaine*, 2022 WL 827646, at *5-6; *Ramirez*, 2022 WL 1019554, at *12; *Nuoc Mia Vien Dong 2, LLC*, 2021 WL 3271232, at *6. The court agrees with those decisions and applies a $100 hourly rate for paralegals and legal assistants, including Marcus Handy.

Collectively, Garcia's counsel billed a total of 12.6 hours, comprised of 4.5 hours of attorney time and 8.1 hours of non-attorney time. The court concludes that it is unreasonable for four attorneys to bill time on a single simple case that falls within the formulaic run of cases filed by this plaintiff and the Potter Handy firm. The court further finds that the use of fourteen paralegals and legal assistants to perform 8.1 hours of work is unreasonable "given the inherent duplication of effort and inefficiency arising from the circumstances of so many individuals performing the same limited tasks." *Iguanas Burritozilla*, 2022 WL 1750472, at *6 (reducing paralegal and staff time). Garcia's counsel fails to justify their need for four attorneys and fourteen support staff or how they delegated or divided their work on this case. To account for duplicated efforts and overstaffing by attorneys and non-attorney staff, the court awards fees for the three attorney timekeepers who billed the most time to this case— Amanda Seabock, Isabel Masanque, and Tehniat Zaman. The court does not award fees for Mark Potter, who only billed 0.5 hours to the case. The court also awards fees for the three paralegals and legal support staff who billed the most time—Sachin Bukkan (2.2 hours), Marcus Handy (1.4 hours), and Leonardo Pahuriray (0.9 hours).

In accordance with the adjusted rates and time above, the court awards total fees of $1,939 as follows:

| Timekeeper | Adjusted Hourly Rate | Adjusted Hours | Total |
|---|---|---|---|
| Amanda Seabock | $350 | 1.5 | $525.00 |
| Isabel Masanque | $350 | 0.6 | $210.00 |
| Tehniat Zaman | $250 | 1.9 | $475.00 |
| Paralegals/ Legal Assistants | $100 | 7.29 | $729.00 |
| **TOTAL** | | | **$1,939** |

Garcia's counsel also seeks $832 in costs, comprised of filing, service, and investigator fees. The court finds these fees reasonable and awards $832 in litigation costs.

## IV. CONCLUSION

For the foregoing reasons, the court grants Garcia's motion for default judgment in part. The court orders an injunction requiring Woldemichael to provide compliant wheelchair-accessible indoor and outdoor dining surfaces at La Dolce Vita. The court also awards Garcia $4,000 in statutory damages, $1,939 in attorneys' fees, and $832 in costs, for a total monetary award of $6,771.00. The clerk is ordered to enter default judgment in favor of Garcia and close the case.

Garcia shall promptly serve Woldemichael with this order and the Default Judgment and file a proof of service.

**IT IS SO ORDERED.**

Dated: August 22, 2022



Donna M. Ryu
United States Magistrate Judge